IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANN HVISDAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-1128 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for supplemental security income on February 10, 2011, alleging a disability onset date of January 15, 2008,[1] due to depression, anxiety Asperger's syndrome and obsessive-compulsive disorder. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on May 3, 2012, at which plaintiff, represented by counsel, appeared and testified. On May 24, 2012, the ALJ issued an unfavorable decision finding that plaintiff is not disabled. On June 20, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 25 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has at least a high school education but no past relevant work experience and she has not performed any substantial gainful activity since her alleged onset date.[2]

After reviewing plaintiff's medical records and hearing testimony from plaintiff, and plaintiff's case manager, Mary Winters, and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that while plaintiff suffers from the severe impairments of depression, anxiety and Asperger's syndrome, the medical evidence does not show that plaintiff's impairments, alone or in combination, meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at all exertional levels but that she is limited to jobs requiring routine, repetitive tasks, and only

---

[1] Plaintiff filed a prior application for supplemental security income which was denied on May 18, 2010. The ALJ found that decision to be final and binding. Accordingly, plaintiff is precluded from claiming disability prior to May 18, 2010.

[2] Although plaintiff has performed work in the past as a retail cashier, demonstrator, fast food clerk, hostess, laborer and labeler (R. 60-61), the ALJ found that plaintiff's earnings from those positions never rose to the level of substantial gainful activity under the regulations. (R. 23).

AO 72
(Rev. 8/82)

occasional interaction with the public, coworkers and supervisors. (R. 25). Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including hand packager, night cleaner and laundry worker. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

---

[3] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

Here, plaintiff raises two challenges to the ALJ's decision: (1) the ALJ erred at step 3 by finding that plaintiff does not have an impairment that meets or medically equals the criteria of any listed impairment; and, (2) the ALJ erred in finding that plaintiff is not disabled because she is unable to perform any work activity on a full-time basis. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred at step 3 by finding that plaintiff does not have an impairment, or combination of impairments, that meets or medically equals any of the listed impairments set forth in Appendix 1 of the Regulations. Specifically, she argues that she meets the "B" criteria of both Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders. This argument is without merit as substantial evidence in the record supports the ALJ's step 3 finding.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the impairments listed in appendix 1 of the Regulations. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is

AO 72
(Rev. 8/82)

- 4 -

on the claimant to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

The ALJ in this case correctly identified Listings 12.04 and 12.06 as the relevant listings that compare with plaintiff's severe mental impairments. The required level of severity for either of those listings is met only when both the "A" and "B" criteria of that listing are satisfied, or when the "A" criteria and "C" criteria are met. 20 C.F.R., Part 404, Subpart P, Appendix 1, §§12.04 and 12.06. In this case, plaintiff challenges the ALJ's finding that she does not meet the "B" criteria of either Listing.[4]

The "B" criteria of listing 12.04 and 12.06 are identical and require that a claimant's mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or, 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.04B and 12.06B. (emphasis added).

Here, the ALJ reviewed the evidence and determined that plaintiff's mental impairments result in moderate restrictions in activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in concentration, persistence or pace, and "a few," but not repeated, episodes of decompensation. (R. 24-25). Because plaintiff's mental impairments do not result in marked limitations in at least two areas, or one marked limitation in one area along with repeated episodes of decompensation, each of extended duration, the ALJ found that plaintiff does not meet the "B" criteria of 12.04 or 12.06.

---

[4] There is no dispute that plaintiff meets the "A" criteria of both Listing 12.04 and 12.06. The ALJ additionally found that plaintiff does not meet the "C" criteria of either of those Listings and plaintiff does not challenge that finding.

AO 72
(Rev. 8/82)

Plaintiff, however, contends that, in addition to marked limitations in social functioning, she also has marked limitations in activities of daily living and in concentration, persistence or pace.[5] Upon review of the record, this court is satisfied that the ALJ's adequately explained why he found that plaintiff has no more than moderate limitations in those areas and that his finding is supported by substantial evidence as outlined in his decision.

Under the Regulations, the ALJ is to rate the degree of a claimant's functional limitation "based on the extent to which [the] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §416.920a(c)(2). With regard to the functional areas of activities of daily living, social functioning and concentration, persistence or pace, a five-point scale is used to rate the degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §416.920a(c)(3). A "marked" limitation under the Regulations means "more than moderate but less than extreme." 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C). The "assessment of functional limitations is a complex and highly individualized process that requires [consideration] of multiple issues and all relevant evidence to obtain a longitudinal picture of [the] overall degree of functional limitation." 20 C.F.R. §416.920a(c)(1).

In this case, upon consideration of all of the relevant evidence, the ALJ found that plaintiff has no more than moderate limitations in activities of daily living. The ALJ noted that plaintiff "has been able to live fairly independently, perform various chores for her father, enjoy board games and movies, cook, do laundry and wash dishes." (R. 24). The ALJ further recognized that plaintiff attends activities at the YMCA and that she testified that she has been able to engage in

---

[5] Plaintiff does not challenge the ALJ's finding that she has not had repeated episodes of decompensation, each of extended duration. Under the Regulations, the term "repeated episodes of decompensation, each of extended duration" means three episodes in one year, or an average of once every four months, each lasting for at least 2 weeks. 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C)(4).

some work activity at a rehabilitation center and attend community college. (R. 24).

In support of her argument that her limitations in activities of daily living are marked, plaintiff points to evidence in the record that she has difficulties in paying bills and spending money appropriately, that she needs assistance in preparing basic meals, completing household chores and taking medications, and that she has "significant" difficulties in personal hygiene. However, even if plaintiff has some difficulties in the foregoing areas, the evidence as a whole does not indicate that plaintiff's restrictions in the area of activities of daily living are marked. Under the Regulations, "marked" is not defined "by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function." 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C)(1).

Here, the ALJ considered the evidence as a whole and concluded that plaintiff's limitations in the area of activities of daily living were no more than moderate and it is not this court's function to re-weigh that evidence. Instead, the court must only determine whether that finding is supported by substantial evidence, and is satisfied that it is, based on the evidence set forth in the ALJ's decision, as well as by the opinion of Dr. Phyllis Brentzel, the state agency reviewing psychologist,[6] who also concluded that plaintiff has only moderate restrictions in activities of daily living. (R. 102).

Likewise, the ALJ's finding that plaintiff has only moderate limitations in concentration, persistence or pace is supported by substantial evidence. In this area, the ALJ noted that despite plaintiff's mental impairments, records from the Rochester Staunton clinic

---

[6] State agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96 6p.

establish that plaintiff's "thought processes for the most part remain intact and there are no severe problems with memory, concentration, attention or focus." (R. 439-542). In addition, the ALJ cited the fact that plaintiff has been able to participate in some college training and has been able to manage her activities of daily living without much difficulty.

Although plaintiff argues that her difficulties in concentration, persistence or pace are marked, her brief does recognize that the difficulties she has in concentration and task persistence primarily stem from her marked difficulties in social functioning. However, this is in line with the ALJ's findings, as the ALJ specifically noted records from the Beaver County Rehabilitation Center ("BCRC") which indicate that plaintiff's problems in performing her job there "were related more to her somewhat impaired ability regarding interpersonal relationships than to any significant impairment in her ability to learn, carry out instructions or perform job tasks." (R. 24; 388-399). As a result, the ALJ correctly found plaintiff's limitations in social functioning to be marked but with only moderate limitations in concentration, persistence or pace. The ALJ's finding is supported by substantial evidence in the record as outlined in the decision, as well as by the report of Dr. Brentzel, who also rated only moderate limitations in concentration, persistence or pace. (R. 102).

Because plaintiff has marked limitations in only one functional area, the ALJ correctly found that she does not meet the "B" criteria of either Listing 12.04 and 12.06. The ALJ has the final responsibility for determining whether a plaintiff's impairments meet or equal the requirement of a listing, 20 C.F.R. §416.927(e)(2), and it is not this court's function to re-weigh the evidence in rating the degree of functional limitations in the relevant areas. This court's task merely is to determine whether the ALJ's ratings are supported by substantial

evidence, and is satisfied that they are in this case. Accordingly, the court finds no error in the ALJ's step 3 finding.

Plaintiff's second argument is that, even if she does not meet or equal a listing, she otherwise is unable to perform work on a regular and continuing basis on an 8-hours a day/5-days a week or equivalent work schedule as required under SSR 96-8p and, therefore, the ALJ erroneously found that she is not disabled at step 5. The court has reviewed the ALJ's decision and is satisfied that it complies with the dictates of SSR 96-8p in regard to the assessment of plaintiff's residual functional capacity.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §416.920(g). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §416.945(a). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p,

In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(3)-(4); SSR 96-8p. In regard to mental abilities, the ALJ first must assess the nature and extent of the claimant's mental limitations and restrictions and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §416.945(c).

The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

The ALJ adhered to the foregoing standards in this case. First, he identified plaintiff's functional limitations and restrictions and then assessed her work-related abilities as to those functions affected by those restrictions, including those set forth in 20 C.F.R. §416.945(b), (c) and (d). The ALJ then incorporated into his residual capacity finding all restrictions on plaintiff's functional abilities arising from her impairments that were supported by the record. (R. 24-27). Specifically, the ALJ found that plaintiff "is limited to jobs requiring only routine, repetitive tasks and only occasional interaction with the public, co-workers and supervisors." (R. 25). The ALJ's residual functional capacity assessment complies with the requirements of SSR 96-8p and otherwise is supported by substantial evidence.

Plaintiff argues that she unable to work on a "regular and continuing basis" because she was hospitalized on two occasions, she has difficulty managing her medications, budgeting money and maintaining interpersonal relationships, and she failed to keep her part-time job at the BCRC. However, the ALJ specifically acknowledged and addressed all of those factors in his decision in assessing plaintiff's residual functional capacity. He discussed in detail the medical evidence relating to plaintiff's two hospitalizations in June 2010 and December 2011 and considered the fact that plaintiff had to quit her job at BCRC because she had difficulty with people on the job. (R. 26). After consideration of all that evidence, he concluded that "while [plaintiff] has had difficulties periodically with increasing depression and anxiety, they have been treated effectively with medications, hospitalization and partial hospitalization programs and have not been continuously disabling for a twelve-month period as required by

AO 72
(Rev. 8/82)

the regulations." (R. 25-27). The ALJ also observed that despite her emotional difficulties, "she has been able to live independently, assist her father with chores, care for all of her basic needs, cook, clean, do laundry, and enjoy playing board games and attending the YMCA ... has resumed her college program and is attempting to improve her grades." (R. 27). He also noted that plaintiff testified at the hearing that she has achieved some benefit from her depression with medication.

As the ALJ recognized, the evidence in this case establishes that plaintiff's most difficult limitation is her ability to relate to others. Plaintiff herself acknowledged at the hearing that having a job where she did not have to deal with people much would be "a little better." (R. 52). The ALJ acknowledged her difficulties in this area by limiting plaintiff to jobs requiring only occasional interaction with the public, coworkers and supervisors and the vocational expert testified that there are jobs existing in the national economy which plaintiff can perform in light of her age, education, work experience and residual functional capacity.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

AO 72
(Rev. 8/82)

cc: Stanley E. Hilton, Esq.
801 Jonnet Building
Monroeville, PA 15146

Christy Wiegand
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219